UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DEBORAH COLELLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:14-cv-00297-JAW |
| | ) | |
| BOTTOMLINE | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**SUMMARY JUDGMENT ORDER**

Deborah Colello claims that her former employer, Bottomline, Inc., violated federal and state law by failing to pay her overtime for work in excess of forty hours. Before the Court is Bottomline's motion for summary judgment on the ground that Ms. Colello is not owed overtime pay as a matter of law because she is administratively exempt. The Court concludes that under Federal Rule of Civil Procedure 56, there are genuine disputes of material fact that require jury resolution. It denies Bottomline's motion for summary judgment.

**I.   PROCEDURAL POSTURE**

On June 25, 2014, Ms. Colello filed a complaint against Bottomline in Cumberland County Superior Court. *State Ct. R.* Attach. 2 *Compl.* (ECF No. 6) (*Compl.*). The Complaint alleged a single count for failure to pay overtime wages. *Id.* at 1-2. On July 17, 2014, Bottomline removed the case to federal court on the grounds of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction

pursuant to 28 U.S.C. § 1332; it also demanded a jury trial. *Notice of Removal and Demand for Jury Trial* (ECF No. 1) (*Removal Pet.*); *see also State Ct. R.* Attach. 5 *Notice of Filing of Notice of Removal* (ECF No. 6). On July 28, 2014, Bottomline answered Ms. Colello's complaint. *Def.'s Answer to Pl.'s Compl. and Demand for Jury Trial* (ECF No. 7) (*Answer*).

On January 29, 2015, Bottomline filed a notice of intent to file a motion for summary judgment and requested a pre-filing conference. *Def.'s Notice of Intent to File Rule 56 Mot. for Summ. J. and Need for Pre-filing Conference Pursuant to Local Rule 56(h)* (ECF No. 15). In anticipation of a Local Rule 56(h) Conference, Bottomline filed a pre-conference memorandum on February 9, 2015. *Def.'s Pre-filing Conference Mem.* (ECF No. 17). On March 18, 2015, the parties filed a joint motion for approval of their proposed summary judgment schedule. *Rule 56(h) Joint Mot. with Proposed Schedule* (ECF No. 18). The Court approved the parties' proposed summary judgment schedule, *Order Granting Mot. for Approval of Local Rule 56(h) Schedule* (ECF No. 19), which dispensed with the Local Rule 56(h) Conference. *Local Rule 56(h) Conference Cancellation* (ECF No. 20).

On April 29, 2015, Bottomline moved for summary judgment with a supporting statement of material facts. *Def.'s Mot. for Summ. J.* (ECF No. 21) (*Def.'s Mot.*); *Def.'s Statement of Undisputed Material Facts* (ECF No. 22) (DSMF). On May 29, 2015, Ms. Colello opposed Bottomline's motion. *Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J.* (ECF No. 23) (*Pl.'s Opp'n*). She filed a reply to Bottomline's statement of material facts that same day, *Pl.'s Opposing Statement of Material Facts* at 1-2 (ECF No. 24)

(PRDSMF), as well as her own statement of additional material facts.  *Id.* at 2-4 (PSAMF).  On June 12, 2015, Bottomline filed a reply to Ms. Colello's opposition and to her statement of additional material facts.  *Def.'s Reply to Pl.'s Obj. to Mot. for Summ. J.* (ECF No. 27) (*Def.'s Reply*); *Def.'s Reply Statement to Pl.'s Additional Material Facts* (ECF No. 28) (DRPSAMF).

On June 26, 2015, Ms. Colello moved for leave to file a sur-reply.  *Pl.'s Mot. for Leave to File Sur-Reply* (ECF No. 29).  On June 30, 2015, Bottomline opposed Ms. Colello's motion.  *Def.'s Obj. to Mot. for Leave to File Sur-Reply* (ECF No. 30).  The Court granted Ms. Collello's motion on July 1, 2015.  *Order Granting Mot. for Leave to File Sur-Reply* (ECF No. 31).  On July 15, 2015, Ms. Colello filed her sur-reply.  *Pl.'s Sur-Reply in Resp. to Def.'s Reply to Pl.'s Obj. to Mot. for Summ. J.* (ECF No. 33) (*Pl.'s Sur-Reply*).  On July 27, 2015, Bottomline filed a response to Ms. Colello's sur-reply.  *Def.'s Resp. to Pl.'s Sur-Reply Brief* (ECF No. 34) (*Def.'s Resp. to Sur-Reply*).

## II.   SUMMARY JUDGMENT FACTS[1]

Bottomline's business is to provide financial processing services; in particular, it provides collaborative payment, invoice, and documentation automation solutions to corporations, financial institutions, and banks.[2]  PSAMF ¶ 25; DRPSAMF ¶ 25.

---

[1]       In keeping with "the conventional summary judgment praxis," the Court recounts the facts in the light most hospitable to nonmovant's case theories consistent with record support.  *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002).

[2]       Ms. Colello's paragraph twenty-five states:

Bottomline Technologies, Inc.'s business is to provide financial processing services.

PSAMF ¶ 25.  Bottomline interposed a qualification, fleshing out in greater detail the nature of their business.  DRPSAMF ¶ 25.  It cited two sources.  First, in a letter defining the terms and scope of Ms. Colello's employment, Bottomline described its business as "provid[ing] collaborative payment, invoice and document automation solutions to corporations, financial institutions and banks."  DSMF Attach.

Bottomline takes as revenue a commission on each transaction it processes.[3]  PSAMF

¶ 26; DRPSAMF ¶ 26.

---

3 *Letter from April Morgan, Manager of Human Resources, Bottomline, to Debra Colello*, at 1 (ECF No. 22).  Second, Ms. Colello's résumé described Bottomline's business as being a "global provider of cloud-based payments and invoice automation software/services."  DSMF Attach. 1 *Debra J. Colello Résumé*, at 1 (ECF No. 22).  The Court includes Bottomline's qualification but amends the sentence to include only the first source because the second source appears elsewhere in the statement of material facts.  *See* DSMF ¶ 16; PRDSMF ¶ 16.

[3]       Ms. Colello posited fifteen statements of additional material fact, PSAMF ¶¶ 25-39, and she supported the statements by supplying her own affidavit and citing the deposition of her former supervisor, Susan Coward.  PRDSMF Attach. 2 *Aff. of Debra Colello* (ECF No. 24) (*Colello Aff.*); *id.* Attach. 3 *Dep. of Susan Coward* (ECF No. 24) (*Coward Dep.*).  In its reply, Bottomline objected to five of Ms. Colello's paragraphs, citing Federal Rules of Evidence 601 and 602.  DRPSAMF ¶¶ 26-29, 37.  The basis for Bottomline's objections is that Ms. Colello did not have sufficient personal knowledge of Bottomline's business to make the statements.  *Id.*  The Court considers Bottomline's foundational objections frivolous and overrules each of them.

It is ironic that Bottomline takes the position in this motion that it employed Ms. Colello in "a bona fine, executive, administrative, or professional capacity," *Def.'s Mot.* at 5, and despite her position, Bottomline claims that Ms. Colello knew so little about Bottomline that she does not have an adequate foundation to make statements about such basic things as how Bottomline makes its money.

Ms. Colello's paragraph 26 reads:

Bottomline takes as revenue a commission on each transaction it processes.

PSAMF ¶ 26.  In support, Ms. Colello cites her own affidavit, which states "Bottomline takes as revenue a commission on each financial transaction it processes."  *Collelo Aff.* ¶ 3.

Bottomline responds:

Objection.  F.R.Ev. 601, 602.  Colello has no personal knowledge of the basis for the revenue received by Bottomline.

DRPSAMF ¶ 26.  Bottomline did not otherwise respond to the paragraph.

Bottomline's response is inappropriate.  Bottomline failed to comply with Local Rule 56(c), which required Bottomline to "admit, deny or qualify the facts."  D. ME. LOC. R. 56(c).  By failing to respond other than to object, Bottomline waived the right to contest the truthfulness of the statement.

Nor is the objection well taken.  Rule 601 states in part that "[e]very person is competent to be a witness unless these rules provide otherwise," FED. R. EVID. 601, and Rule 602 states in part that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  FED. R. EVID. 602.

Bottomline offers nothing beyond the bald assertion that "Colello has no personal knowledge of the basis for the revenue received by Bottomline."  DRPSAMF ¶ 26.  While "[t]he party offering the testimony has the burden of laying a foundational showing that the witness had an adequate opportunity to observe, actually observed, and presently recalls the observation," it is a "minimal" burden: if "reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible."  1 MCCORMICK ON EVIDENCE § 10 (7th ed. rev. 2013).  While Ms. Colello would bear the burden of laying a foundational showing as the party offering the testimony, the Court also considers facts and inferences in the light most favorable to her as the nonmoving party at summary judgment.  Here, Ms. Colello provided her affidavit as support for her statement.  *Colello Aff.* ¶ 3.

Ms. Colello was employed as a Client Relations Manager, Commissions Program, Paymode-X, by Bottomline from June 18, 2012 to March 27, 2014. DSMF ¶ 1; PRDSMF ¶ 1. The terms of her employment, including her annual salary of $89,500, and a brief description of her duties are set forth in her offer letter dated May 30, 2012. DSMF ¶¶ 2-3; PRDSMF ¶¶ 2-3. The written job description for the position of Client Relationship Manager, Commission Program, Paymode-X is an accurate description of Ms. Colello's responsibilities. DSMF ¶ 4; PRDSMF ¶ 4.

Those responsibilities included working directly with and building personal relationships with Bottomline's Paymode-X Commission Program customers, handling complex problem-solving requests from customers for all program issues, including process improvement, change management, and problem triage. DSMF ¶¶ 5, 8; PRDSMF ¶¶ 5, 8. Ms. Colello was the primary contact for key customers post-implementation, as well as the services representative for Commission Program customers, and she submitted recommendations to management regarding enhancements for these customers. DSMF ¶¶ 7, 9; PRDSMF ¶¶ 7, 9. Within Bottomline, she was required to work closely with the following departments: Sales, Marketing, Support, Enrollment & Activations, Implementations, Product Management, Development, and Quality Assurance. DSMF ¶ 6; PRDSMF ¶ 6.

On a daily basis, Ms. Colello responded to customer issues to ensure they were addressed in a timely and professional manner, and, in three or four conversations

---

The Court overrules Bottomline's objection and deems the paragraph admitted. Using the same rationale, the Court overrules Bottomline's objections to Plaintiff's paragraphs 27, 28, 29, 37. Because Bottomline failed to admit, qualify or deny paragraphs 27, 28, and 37, the Court deems each paragraph admitted without qualification.

over the course of her employment, identified potential areas of expansion with customers.[4]  DSMF ¶ 10; PRDSMF ¶ 10.  She made frequent recommendations for resolution of clients' problems, identifying "what was wrong and who could best fix it," as well as weekly recommendations on how Bottomline could improve its customers' businesses.  DSMF ¶¶ 11-12; PRDSMF ¶¶ 11-12.  Ms. Colello supported accounts by participating in key customer and channel partner implementations and facilitating training for her customers.  DSMF ¶ 13; PRDSMF ¶ 13.  She dealt with escalated service or support needs of her customers, communicating their product enhancement requests to the product management team.  DSMF ¶ 14; PRDSMF ¶ 14.  Ms. Colello was an advocate for her customers, essentially "the voice for her customers" within Bottomline, in the sense that she was charged with ensuring that errors in their accounts were resolved within Bottomline.[5]  DSMF ¶ 15; PRDSMF ¶

---

[4]      Bottomline's paragraph ten states:

On a daily basis, Colello responded to customer issues to ensure they were addressed in a timely and professional manner, and, *from time to time*, identified potential areas of expansion.

DSMF ¶ 10 (emphasis supplied).  Ms. Colello interposed a qualified response specifying that she "identified potential areas of expansion with customers *only 'three or four' times over the course of her employment . . . .*"  PRDSMF ¶ 10 (emphasis supplied).
         The record evidence supports Ms. Colello's qualification.  *Id.* Attach. 1 *Dep. of Debra J. Colello* 63:7-11 (*Colello Dep.*).  The Court amended Bottomline's statement to reflect the qualification, which makes Bottomline's general statement more specific.

[5]      Bottomline's paragraph fifteen states:

Colello was an advocate for her customers, essentially 'the voice for her customers' within Bottomline.

DSMF ¶ 10.  Ms. Colello interposed a qualification: she "was an advocate for 'her' customers and the 'voice for her customers' in so much as she was charged with ensuring that errors in their accounts were resolved within Bottomline."  PRDSMF ¶ 15.
         In her deposition, Ms. Colello admitted that she was "basically . . . advocating for your customers" and that she was "essentially the voice for your customers."  *Colello Dep.* 71:5-10.  In her affidavit, which she cited in support of her qualification, she seeks to refine what she meant by these

15; PSAMF ¶ 25; DRPSAMF ¶ 25.   Ms. Colello's job typically consisted of communicating customer problems with various Bottomline departments in order to resolve customer complaints and relay the answer to the customer; although she made weekly recommendations to Bottomline about growth opportunities for her clients, she did not "advocate" or otherwise speak for those clients for Bottomline's customers in any other manner.[6]  PSAMF ¶ 33; DRPSAMF ¶ 33.

---

statements: "My job typically consisted of communicating customer problems with various Bottomline departments in order to resolve customer complaints and relay the answer to the customer.  This was the sole way in which I 'advocated' for Bottomline customers."  *Colello Aff.* ¶ 11.

The questions to which Ms. Colello responded were qualified by the adverbs "basically" and "essentially."  Viewing the evidence in the light most favorable to Ms. Colello, the Court amended Bottomline's statement to incorporate her qualification on this point.

[6]     Ms. Colello's paragraph 33 reads:

> Colello's job typically consisted of communicating customer problems with various Bottomline departments in order to resolve customer complaints and relay the answer to the customer.  She did not "advocate" or otherwise speak for those clients for Bottomline's customers in any other manner.

PSAMF ¶ 33.  Bottomline denied this entire statement, stating that Ms. Colello had "extensive client contact."  DRPSAMF ¶ 33.

The parties largely rehashed their arguments in footnote five regarding whether Ms. Colello was an "advocate" for her clients. Again, Ms. Colello cited paragraph eleven of her affidavit as support for her statement.  *Colello Aff.* ¶ 11 (reciting nearly identical verbatim to the proposed statement).

Bottomline denied this fact: "Colello had extensive client contact, including advocating for clients in numerous area[s] and was generally the voice for clients."  DRPSAMF ¶ 33.  Because its denial cited portions of the record not cited in support of its proposed fact addressed in footnote five, the Court turns to this additional record evidence.  Bottomline cited two sources in denying Ms. Colello's statement: Ms. Colello's and Ms. Coward's depositions.  Ms. Coward's deposition is not illuminating and speaks largely in generalities.  *See Coward Dep.* 21:1-25.  In Ms. Colello's deposition, she says she "had to recommend how to resolve a problem" and made "recommendations" on "escalated problems."  *Colello Dep.* 74:17-18, 75:1-19.  Going beyond problem-solving, she says:

> Q. Did you make any recommendations on growth opportunities for customers?
> A. How did I think we could improve their business?
> Q. Yes.
> A. Yes.
> Q. How frequently?
> A. On weekly updates to my managers I would have made some recommendations.

*Id.* 68:9-17.

The parties' dispute appears to be a matter of semantics: i.e., whether Ms. Colello was advocating for her clients by making recommendations about growth opportunities.  As the Court is required to view the facts in the light most favorable to Ms. Colello, the Court has slightly amended

In Ms. Colello's own words, she, as a Client Relationship Manager:

Developed and maintained travel industry client relationships with agile environment for global provider of cloud-based payments and invoice automation software/services.  Managed financial processing, including foreign exchange for 19 major accounts, involving over 15,000 vendors for clients, including cruise line and national car rental companies with annual sales of $1M-250M.  Utilized CRM [customer relations management] strategies to build revenues and retain accounts, collaborating with payers, recipients and internal team members, including systems development to resolve complex issues for high value clients and negotiating with vendors to identify and support areas for revenue growth for service enhancements.

DSMF ¶ 16; PRDSMF ¶ 16.

The detailed description of her "Professional Experience" on the résumé she prepared after leaving Bottomline accurately represents the work she did while employed at Bottomline.  DSMF ¶ 17; PRDSMF ¶ 17.  Ms. Colello was required to obtain approval for any billing adjustments and could not refund monies to a customer without approval from a Senior Executive; she was not authorized to send mass mailings to vendors or customers without the approval of a Senior Executive; and she was not involved in meetings to discuss Bottomline's overall vision and/or the long-term goals and objectives of Bottomline's customers.  DSMF ¶ 18; PRDSMF ¶ 18.  Ms. Colello could, and did, make recommendations to management about "forward plans for vendors" and the customers' "overall vision or road map."  DSMF ¶ 19; PRDSMF ¶ 19.

From Bottomline's perspective as articulated by Jill McFarland, one of Ms. Colello's two supervisors during her employment at Bottomline, the position of Client

---

the paragraph to reflect her testimony but retains her general statement that she did not otherwise act as an advocate.

Relationship Manager is "an integral part of the business. The position is responsible for managing very high-visibility clients, an entire portfolio of both travel vendors and agents, and this role acts as the primary liaison between the client and Bottomline."[7]  DSMF ¶¶ 20-21; PRDSMF ¶¶ 20-21.  Ms. Colello's first supervisor, Susan Coward, agreed that Ms. Colello had extensive client contact, resolved customer problems on a daily basis, and was liked and relied upon by her customers. DSMF ¶ 22; PRDSMF ¶ 22.  According to Ms. Coward, Ms. Colello made many recommendations for improvements; growth opportunities for customers; vision and strategy for customers; and for the overall strategy for account payable automation as it related to the Commission Program to management.  DSMF ¶ 23; PRDSMF ¶ 23.  Ms. Coward considered Ms. Colello a "valuable employee" who was "essentially the voice for her customers" within Bottomline.  DSMF ¶ 24; PRDSMF ¶ 24.

Before Ms. Colello was hired by Bottomline, Bottomline acquired a travel agent/vendor commission business as part of a larger deal with Bank of America. PSAMF ¶ 27; DRPSAMF ¶ 27.  The purpose of this agent/vendor commission business was to allow companies like Carnival Cruise Lines to pay commissions to travel

---

[7]     Ms. Colello interposed the following qualification to Bottomline's statement:

> Paragraph 20 of Defendant's Statement of Undisputed 'Material Facts' contains only Bottomline's position regarding Colello's job responsibilities disguised as 'facts.'

PRDSMF ¶ 20.  Bottomline responded to Ms. Colello's qualification in its reply to her statement of additional material facts, arguing that "Colello has offered no record evidence to support her qualification."  DRPSAMF ¶ 28.  It also opened its reply brief with the statement that "[b]ecause she did not provide a citation to the record for her qualification SMF ¶ 20, she is also deemed to have admitted the facts contained therein."  *Def.'s Reply* at 1 (footnote omitted) (citing D. ME. LOC. R. 7(f)).

This back-and-forth loses sight of an obvious point.  As written, Bottomline's statement begins: "From Bottomline's perspective, . . . ."  DSMF ¶ 20.  The Court concludes that Ms. Colello's requested qualification is already in the statement, and the statement requires no further qualification.

agents such as Expedia. PSAMF ¶ 28; DRPSAMF ¶ 28. These accounts constituted only a miniscule portion of Bottomline's overall business and were seen as a distraction by Bottomline, who had no apparent interest in expanding or improving these services. *Id.* Bottomline's absorption of the formerly Bank of America accounts caused significant problems in their processing as Bottomline converted them to its systems; customers would complain about these problems, and prior to Ms. Colello's employment, Bottomline executives were charged with handling these complaints.[8] PSAMF ¶ 29; DRPSAMF ¶ 29. Ms. Colello was hired by Bottomline to work in a division that was charged with handling customer complaints and payment errors

---

[8]     In full, Ms. Colello proposed the following statement:

>   Bottomline's absorption of the formerly Bank of America accounts caused significant problems in their processing as Bottomline converted them to its systems. Customers would complain about these problems. Prior to Colello's employment, Bottomline executives were charged with handling these complaints.

PSAMF ¶ 29.
    Bottomline qualified its response to the first two sentences, noting that "[t]here were problems with the commission accounts during the first few months beginning in June of 2012 when Colello was supervised by Susan Coward, and customers complained to management." DRPSAMF ¶ 28. It cited portions of Susan Coward's deposition:

>   Q.  In the months starting in June over that summer, can you describe the situation with the accounts?
>   A.  The accounts were chaotic, they were – there were many errors, they weren't balanced. I think that's about it.
>   …
>   Q.  So after the first few months, when did the – when did the chaos start to subside?
>   A.  On those accounts or in general?
>   Q.  First on those accounts.
>   A.  On those accounts, probably sometime in late fall, winter we were in a better place. It wasn't as chaotic.

DSMF Attach. 6 *Susan Coward Dep. Tr.* 6:12-17, 7:17-22 (ECF. No. 22) (*Coward Dep.*). Although "first few months" does appear in the deposition, *id.* 6:18, the passage quoted above makes clear that Bottomline is not entitled to a qualification that would restrict the time period to a few months because three months from June is September—which is obviously not "late fall, winter." *Id.* 7:21-22. The Court rejects Bottomline's requested qualification as contrary to the record.

related to the conversion of the formerly Bank of America business into Bottomline's systems; in essence, she was hired to assure customers that there was someone they could reach out to when there were errors in their accounts.[9]    PSAMF ¶ 30; DRPSAMF ¶ 30.    Moreover, her position description included "fostering and maintaining relationships with current and potential Commissions Program Customers, primary contact for escalation issues and oversee all aspects of the customer relationship including best practices, change management and other services, and primary internal customer advocate post-implementation."    *Id.*    Ms.

---

[9]    Bottomline interposed a qualification:

Colello was hired as a Commission Client Relationship Manager; her job duties included "fostering and maintaining relationships with current and potential Commissions Program Customers, primary contact for escalation issues and oversee all aspects of the customer relationship including best practices, change management and other services, and primary internal customer advocate post-implementation…" Colello Dep. at 54-55; Colello Dep. Ex. 4; *see also* Coward Dep. at 13-14 (Colello's job was to keep customers happy). The position is an integral part of Bottomline's business, commission client managers are responsible for managing very high-visibility clients, an entire portfolio of both travel vendors and agents, and commission managers act as the primary liaison between the client and Bottomline.  McFarland Dep[.] at 19-20; 21-36.

DRPSAMF ¶ 30.
        Taking the second sentence of the qualification first, this language already appears verbatim in the statement of facts, *see* DSMF ¶ 20, and the Court opts not to include the language a second time.
        Turning to the first sentence, Bottomline takes the quoted language from Ms. Colello's position description.  DSMF Attach. 4 *Position Title: Client Relationship Manager, Commissions Program, Paymode-X* (ECF No. 22).  Indeed, Ms. Colello affirmed the accuracy of the language, which appears nowhere else in the statement of facts, in her deposition:

Q.  And the position description, is that what you were responsible for doing?
A.  Yes.

*Colello Dep.* 56:12-14.  Given Ms. Colello's deposition testimony, the Court qualifies the language to include the position description.

Colello was in direct contact with Bottomline customers only with regard to errors in

the processing of their accounts.[10]  PSAMF ¶ 31; DRPSAMF ¶ 31.

---

[10]    This statement parrots its record support.  *See Colello Aff.* ¶ 9 ("I was in direct contact with
Bottomline customers only when they had a complaint or there was a problem in the processing of
their account").

    Bottomline denied Ms. Colello's statement on the ground that she "had extensive contact with
the clients of Bottomline, and was essentially the 'voice of her customers.'"  DRPSAMF ¶ 31.  It cited
Ms. Colello's deposition, which it claimed "acknowledg[ed] that she had 'extensive client contact' and
that she was 'the voice of the customer' escalating support and[/]or service needs, including requests
for product enhancements, of key customers to the product management team."  *Id.*  In relevant part,
the cited portion of her deposition reads:

> Q. Then it goes on to say, "Handle escalated support or service needs for key customers
> including communicating product enhancement requests to the product management
> team."  Did you do that?
> A. I would – again, you're correct.  I would be the voice of the customer listing this is
> what they asked me, and going to the development team's experts to ask them can we
> do this, is it possible.
> Q. So fair to say that you had extensive client contact?
> A. Correct.
> Q. And you were really the person running the client account?
> A. No.

*Colello Dep.* 71:11-72:1.

    Bottomline also cited Ms. Coward's and Ms. McFarland's depositions.  In addition to
confirming that Ms. Colello "had extensive client contact with the clients" and "was essentially the
voice of her customers," Ms. Coward explained that Ms. Colello made "recommendations [that] were
technology related in correcting the code that was driving the payment processing for those vendors
and travel agents."  *Coward Dep.* 21:11-25.  Ms. McFarland explained in greater detail her
understanding of Ms. Colello's role:

> Q. Was – is this position responsible for adjusting any disputes between Bottomline
> and the company or the customer, I guess I should say?  Did the position adjust any
> errors or changes in compensation between Bottomline and the customers?
> A. Responsible for understanding what the adjustment for the customer required and
> making recommendations for those adjustments.
> Q. And other than the adjustments, what else does a person in this role do?
> A. Everything from client asking for a modification to their existing setup with our
> organization, handling any complex escalated issue that the customer may have,
> responsible for working with our product and development organization to provide
> product and development with what those customers are asking for out of our product
> and solutions, to work with all of the service teams across Bottomline internally to be
> the voice of the customer and to advocate on behalf of those customers to ensure we're
> delivering the appropriate solution.

DSMF Attach. 5 *Jill McFarland Dep. Tr.* 19:17-20:14 (*McFarland Dep.*).

    In sum, Bottomline again pointed to language that more characterizes Ms. Colello's role than
describes it by saying that she was "the voice of her customers."  DRPSAMF ¶ 31.  It provided record
support from Ms. Colello's and her supervisors' depositions for its denial of Ms. Colello's assertion that

Ms. Colello was not permitted to sell Bottomline's financial products or services to customers.  PSAMF ¶ 32; DRPSAMF ¶ 32.  If a customer informed Ms. Colello that it was interested in a product that Bottomline provided, she was required to get someone else from Bottomline to reach out to them to discuss the product further.  *Id.* If a customer had an issue with another Bottomline product, they had contacts other than Ms. Colello at Bottomline to whom they could reach out.  *Id.*  At the same time, Ms. Colello could identify additional services to offer vendors.[11]  *Id.*

Ms. Colello would often make suggestions to her supervisors about how Bottomline could prevent and/or more efficiently handle customer complaints; many of these recommendations consisted of nothing more than Ms. Colello passing on processing suggestions from those in more technical roles at Bottomline.  PSAMF ¶ 34; DRPSAMF ¶ 34.  She also made technology-related recommendations, based on what "computer people" had told her.[12]  *Id.*  Ms. Colello was never told that she had

---

she was "in direct contact with Bottomline customers only with regards to errors in the processing of their accounts."  PSAMF ¶ 31.  The dispute, then, centers on the range of services Ms. Colello provided her customers.  While both parties agree she served as the voice of her customers, they disagree on what this characterization actually means—i.e., they disagree regarding the scope of the matters on which she spoke for her customers.  Ms. Colello contends she spoke about only account errors, *see Colello Aff.* ¶ 9, while Bottomline contends she spoke about a broader range of matters.  *See, e.g., McFarland Dep.* 20:4-14.

The Court perceives a genuine dispute of material fact regarding the precise boundaries of Ms. Colello's role at Bottomline.  Charged as it is to view the facts in her favor, the Court admits Ms. Colello's account and rejects Bottomline's denial.

[11]   Bottomline interposed a qualified response to Ms. Colello's paragraph thirty-two on the ground that "Colello was not permitted to contract deals, but was expected to discuss products and services with customers."  DRPSAMF ¶ 32.  The record supports Bottomline's qualification, *see Colello Dep.* 46:23-47:4, so the Court added a sentence to Ms. Colello's statement to reflect the qualification.

[12]   Bottomline interposed this qualification:

Colello made recommendations regarding growth opportunities and vision and strategy for customers, along with technology related recommendations.

DRPSAMF ¶ 34.  There are three pieces to this proposed qualification: (1) growth opportunities, (2) vision and strategy for customers, and (3) technology-related recommendations.

to make recommendations concerning Bottomline's business as part of her primary duty.[13]   PSAMF ¶ 35; DRPSAMF ¶ 35.   Any employee at Bottomline was permitted to make recommendations to their supervisors.   PSAMF ¶ 36; DRPSAMF ¶ 36. Bottomline implemented none of Ms. Colello's recommendations.[14]   PSAMF ¶ 37;

---

There is some support in the record for the qualification. *Coward Dep.* 21:23-25 ("Most of the recommendations were technology related in correcting the code that was driving the payment processing for those vendors and travel agents"), 23:3-8 (answering affirmatively (i) whether Colello "made recommendations on growth opportunities" and (ii) whether she made recommendations "on vision and strategy for customers").

First, because the qualifying language regarding growth opportunities is already in these facts, *see* DSMF ¶ 16, the Court concludes that including it for a second time would be redundant.

Second, because the qualifying language regarding vision is already in these facts, *see* DSMF ¶ 19, the Court again concludes that including it for a second time would be redundant.

What remains is the technology-related recommendations qualifying language.   The Court accepts this piece of the qualification.   Even in so qualifying, however, the Court looks to Ms. Colello's record support for her proposed additional fact, which clarifies what exactly it means to say she made technology-related recommendations. *Coward Dep.* 24:18-22 ("Q. . . . These recommendations on computer programming types of things, was – was Deb coming up with those herself or was she passing on what the computer people had told her? A. She was passing on what the computer people had told her").   The Court admits Bottomline's qualification on this one piece along with a qualification called for by Ms. Colello's record support.

[13]   Bottomline interposed this qualification: "Colello was asked for, and provided her recommendations regarding client issues and concerns." DRPSAMF ¶ 35.   This is not directly relevant to the proposed statement; there is an obvious difference between being told to make recommendations as part of one's primary duty and being asked for them.   Further, Bottomline again cited to record evidence that contradicts its position. *See Colello Dep.* 62:16-18 ("Q. Were you ever discouraged from making recommendations? A. Yes").   For these reasons, the Court rejects Bottomline's qualification.

[14]   Bottomline objected to this paragraph on Rule 601 and 602 grounds.   This is a particularly frivolous objection.   Bottomline claims that Ms. Colello has "no personal knowledge regarding the status of her recommendations once they were submitted to her supervisor." DRPSAMF ¶ 37.   The Court rejects this objection out of hand.   Ms. Colello did not attempt to assert the process by which such a recommendation would be approved; she only stated that when she made a recommendation, Bottomline did not adopt it.   Ms. Colello, as the employee who made the recommendation, must have known whether Bottomline implemented it.

Moreover, Ms. Colello cited the deposition of Ms. Coward as confirming that none of Ms. Colello's recommendations was ever implemented.   PSAMF ¶ 37.   Bottomline states that Ms. Coward "testified that Colello made recommendations to her, which she approved and 'sent up the chain.'" DRPSAMF ¶ 37.   But this is not all of what Ms. Coward said at her deposition.   The transcript reads:

Q. And did you take those recommendations seriously?
A. Yes, I did.
Q. Did you rely on those recommendations?
A. I did.
…
Q. And did you sometimes implement those recommendations?
A. Those recommendations were never implemented by me.
Q. But you had approved it and sent it up the chain?

DRPSAMF ¶ 37.  Despite going as far as to "beg" for supervisors for changes in the Bottomline systems, Ms. Colello was discouraged from making recommendations.[15] PSAMF ¶ 38; DRPSAMF ¶ 38.  Ms. Colello was not permitted to be a part of any short- or long-term planning for Bottomline customers.[16]  PSAMF ¶ 39; DRPSAMF ¶ 39.

## III.   THE PARTIES' POSITIONS

### A.   Bottomline's Motion

Although "FLSA [Federal Labor Standards Act] requires employers to pay overtime compensation for hours worked in excess of forty hours per week," *Def.'s Mot.* at 5, Bottomline notes an exemption to this requirement for those "employed in a bona fine, executive, administrative, or professional capacity."  *Id.* (citing 29 C.F.R. § 541.200 (2015); *Hines v. State Room, Inc.*, 665 F.3d 235, 241 (1st Cir. 2011)).  It

---

A. Yes.

*Coward Dep.* 22:1-12.

If Bottomline had a good faith basis for this objection, it would have been on the ground that it in fact implemented one or more of Ms. Colello's recommendations.  But Bottomline presented no evidence to contradict Ms. Colello's assertion and, in fact, failed to answer whether, subject to the objection, it admitted, qualified or denied the statement.  DRPSAMF ¶ 37.  The Court overrules Bottomline's objection and deems the statement admitted.

[15]   Bottomline interposed a qualification (i) pointing out that Ms. Coward "believed Colello at times made good recommendations and forwarded the recommendations to management" and (ii) itemizing the array of subjects on which Ms. Colello supposedly gave recommendations.  DRPSAMF ¶ 38.   The latter is irrelevant to whether Bottomline discouraged Ms. Colello from making recommendations.  The former may be relevant to the issue, insofar as Ms. Coward was more likely to encourage—rather than discourage—recommendations she found worthy of forwarding up.  *See Coward Dep.* 22:1-12.  Ms. Colello's deposition testimony must be viewed in the light most favorable to her, and the Court admits this fact.  *See Colello Dep.* 61:7-15, 62:16-18.

[16]   It is confusing that Bottomline would seek to qualify Ms. Colello's statement on this point, given that in its own statement of facts Bottomline asserted "she was not involved in meetings to discuss . . . the long-term goals and objectives of Bottomline's customers." DSMF ¶ 18.  Nonetheless, Bottomline interposed this qualification: "Colello made recommendations on vision and strategy for customers, growth opportunities for customers and developing goals and targets to monitor progress of programs."  DRPSAMF ¶ 39.  The Court does not overlook Bottomline's inconsistency and rejects its qualification.

argues Ms. Colello "was properly classified as an exempt employee and not entitled to overtime compensation under FLSA." *Id.*

Bottomline says it can carry the burden of establishing the three-part administrative exception test for determining whether Ms. Colello is an exempt employee. *Id.* at 5-6 (citing 29 C.F.R. § 541.200(a) (2015)). First, it asserts that Ms. Colello "was paid more than $455 per week, satisfying the 'salary basis' test." *Id.* at 6. Next, it reasons that because "her duties were directly related to the management and general business operations of the company," it "has satisfied the second prong." *Id.* at 10. On the third prong, Bottomline submits that Ms. Colello's "job required her to exercise discretion and independent judgment on matters of substantial importance." *Id.* at 10. It narrows the dispute on this prong. In its view, "there can be no dispute" about Ms. Colello's importance, *id.*, so "the only issue for this Court is whether, as a matter of law, [she] exercised the requisite 'discretion and independent judgment' in her position . . . ." *Id.* at 11. It writes that the "work performed by Colello required a level of discretion and independent judgment equal to or greater than" that present in a trio of cases—*Hines*; *Cash v. Cycle Craft Co.*, 508 F.3d 680 (1st Cir. 2007); and *Reich v. John Alden Life Insurance Co.*, 126 F.3d 1 (1st Cir. 1997)—in which the First Circuit determined there was sufficient discretion and independent judgment. *Id.* at 13.

For these reasons, Bottomline says "there is no genuine issue of fact as to the duties and responsibilities performed by Colello as a Customer Relationship Manager at Bottomline." *Id.* at 14.

16

### B.     Ms. Colello's Opposition

Ms. Colello argues that "Bottomline has failed to establish that the administrative exemption applies under either Maine law or the FLSA." *Pl.'s Opp'n* at 5.

She begins with her state-law argument.  Ms. Colello asserts that "Bottomline waived the affirmative defense of the administrative exemption under *state law* when it raised this . . . defense under only *federal law* in its answer." *Id.* at 6 (emphasis in original) (citing FED. R. CIV. P. 8(c); *Federal Deposit Ins. Co. v. Ramirez-Rivera*, 869 F.2d 624, 626 (1st Cir. 1989)).  According to Ms. Colello, this is significant because Maine law sets a higher bar than FLSA does on the third prong of the administration exemption test.  *Id.*  There, Maine law calls for an exemption only "'where the performance of such primary duty *customarily and regularly* includes the exercise of discretion and independent judgment.'"  *Id.* (emphasis in original) (quoting 12-170 C.M.R. ch. 16, § II(A)).  Ms. Colello points out that FLSA is "without any reference to 'customarily and regularly.'" *Id.* (citing 29 C.F.R. § 541.200(a) (2015)).

Ms. Colello turns to FLSA.  Conceding the first prong regarding salary, she addresses the second and third prongs at length.  On the second prong, regarding whether her work related directly to the management or general business operations, her argument boils down to an administration-versus-production dichotomy whereby producers are not exempt but administrators are.  According to Ms. Colello, her "work concerns the 'production' side of Bottomline, rather than the administrative side required by the administrative exception."  *Id.* at 8.

On the third prong, regarding whether her primary duties included the exercise of discretion and independent judgment with respect to matters of substantial importance, Ms. Colello makes several arguments: first, that none of her responsibilities as listed by Bottomline establishes she exercised discretion and independent judgment, *id.* at 11; second, that the fact she made business recommendations does not establish she exercised discretion and independent judgment, *id.* at 13; that the trio of First Circuit cases cited by Bottomline are not on point, *id.* at 14-16; and finally that the factors set out in the federal regulations show the inapplicability of the exemption on her facts.  *Id.* at 16-19.

## C.   Bottomline's Reply

Bottomline opens by addressing Ms. Colello's argument that it has waived the administrative exemption defense under Maine law.  Because its answer had language referencing state-law defenses, Bottomline asserts Ms. Colello had adequate notice of those defenses.  *Def.'s Reply* at 2.  It also contests the notion that Maine law sets a higher bar than FLSA does.  *Id.*

On the second prong, Bottomline dismisses Ms. Colello's attempts to analogize her work to "largely manual tasks" and contends that the case relied upon for this analogy in fact cuts against her.  *Id.* at 3-4 (citing *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002)).  Moreover, Bottomline contends that Ms. Colello's "admissions alone establish that [she] performed work directly related to the running and servicing of Bottomline's business."  *Id.* at 4.

On the third prong, Bottomline rebukes Ms. Colello's efforts to minimize her position. *Id.* at 5. It stresses that Ms. Colello's own statements about her position, which Bottomline thoroughly recounts, reveal that she had the requisite amount of discretion and independent judgment. *Id.* at 7-8.

### D.    Ms. Colello's Sur-Reply

Ms. Colello's sur-reply asserts that new facts introduced in Bottomline's reply should be disregarded, treated as irrelevant, or both. *Pl.'s Sur-Reply* at 1 (citing D. ME. LOC. R. 7(c), 56(d)). In particular, she urges the Court to treat as irrelevant new information claiming "that Colello was the *only* client relationship manager assigned to the travel industry portfolio." *Id.* at 1 (emphasis in original). She objects to other new information regarding her job responsibilities and LinkedIn profile, *id.* at 2-3, as well as charges Bottomline with mischaracterizing the record because her "job responsibilities did not include making recommendations regarding Bottomline's business." *Id.* at 3-4. Finally, according to Ms. Colello, Bottomline confuses (1) a statement of perspective with an undisputed fact and (2) case citations with facts. *Id.* at 4-5.

### E.    Bottomline's Response to Ms. Colello's Sur-Reply

Claiming that "nothing in Local Rule 56(d) or Local Rule 7(c) precludes [a] party from referring to evidence in the record before the Court in its briefing of the issues raised by its Motion for Summary Judgment," Bottomline maintains that the Court should consider "that Colello was the only client relationship manager assigned to the travel industry portfolio" and her LinkedIn profile. *Def.'s Resp. to Sur-Reply*

at 1-2.  Bottomline rejects the notion that it mischaracterized the record regarding Ms. Colello's recommendations, confused perspective with fact, or mistook case citations for facts.  *Id.* at 2-5.

## IV.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if it "has the potential to change the outcome of the suit."  *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)).  A dispute is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party."  *Id.* (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

"If the moving party has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue.'"  *McCarthy v. City of Newburyport*, 252 Fed. App'x 328, 332 (1st Cir. 2007) (internal punctuation omitted) (quoting *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)).  In other words, the nonmoving party must "present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims."  *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)).

20

The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011) (citing *Fed. Ins. Co. v. Commerce Ins. Co.*, 597 F.3d 68, 70 (1st Cir. 2010)). But the Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" *Tropigas*, 637 F.3d at 56 (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); *accord Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009).

### B.    Analysis

There are two main issues before the Court on Bottomline's motion for summary judgment. The first is whether Bottomline waived the administrative exemption under Maine law. The second is whether the facts establish a genuine dispute of material fact on the application of the administrative exemption to Ms. Colello under federal law and—assuming no waiver—Maine law.

### 1.    Waiver

The Federal Rules stipulate that a party responding to a pleading must affirmatively state any affirmative defense, FED. R. CIV. P. 8(c), and "[a]s a general matter, unpleaded affirmative defenses are deemed waived." *Shervin v. Partners Healthcare Sys.*, 804 F.3d 23, 52 (1st Cir. 2015) (citing *Ramirez-Rivera*, 869 F.2d at 626). The administrative exemption under FLSA "is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). Although other circuits have been more forgiving, *see,*

*e.g.*, *Huff v. Dekalb Cnty.*, 516 F.3d 1273, 1278 n.5 (11th Cir. 2008) (not requiring a defendant to raise FLSA exemption in its answer), the rule in the First Circuit is that an affirmative defense to a FLSA claim is waived if not affirmatively pleaded. *Schmidtke v. Conesa*, 141 F.2d 634, 635 (1st Cir. 1944) (per curiam); *City of Holyoke v. Int'l Ass'n of Firefighters (In re Lemieux)*, 641 F. Supp. 2d 60, 63-64 (D. Mass. 2009). "Affirmative defenses must be pled or they will generally be deemed waived and excluded from the case." *Jewelers Mut. Ins. Co. v. N. Barquet, Inc.*, 410 F.3d 2, 11 (1st Cir. 2005); *Jakobsen v. Mass. Port Auth.*, 520 F.2d 810, 813 (1st Cir. 1975). It follows from this basic rule that (1) if Ms. Colello raised the state-law overtime claim in her Complaint and (2) Bottomline failed to raise the state-law affirmative defense of administrative exemption in its answer, Bottomline waived the defense.

The record, however, makes clear that neither condition is present in a way that demands waiver. On its face, Ms. Colello's Complaint does not allege an overtime claim under the relevant Maine statute: 26 M.R.S. § 663(3)(K). Instead, her Complaint states generally that "Plaintiff did not receive any payment for overtime despite demand for that compensation." *Compl.* ¶ 6.[17] Even so, Bottomline knew that she intended to assert a state-law claim under 26 M.R.S. § 663(3)(K). *See Removal Pet.* ¶ 2 ("Plaintiff alleges violation of the wage and overtime provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. [§] 201, *et seq.*, as well as Maine state law, 26 M.R.S.A. [§] 663(3)(K)"). Bottomline's Answer thus "invokes

---

[17]     There is an error in the paragraph numbering of the Complaint such that it proceeds five, six, seven, six, eight. *Compl.* The Court cites the second six here.

the defenses, protections and limitations of [FLSA] and/or any other applicable *state or federal law.*" *Answer* at 3 (emphasis added).

While this language is somewhat general, the First Circuit has instructed that "[i]n determining whether general, non-specific language in a defendant's answer . . . suffices to preserve an affirmative defense, an inquiring court must examine the totality of the circumstances and make a practical, commonsense assessment about whether Rule 8(c)'s core purpose—to act as a safeguard against surprise and unfair prejudice—has been vindicated." *Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 593 (1st Cir. 1995), *overruled on other grounds by Carpenters Local Union No. 26 v. U.S. Fidelity & Guar. Co.*, 215 F.3d 136 (1st Cir. 2000). Because Ms. Colello alleged her Complaint in generalities, as is her right under the modern pleading standard, and because Bottomline in fact raised the state-law affirmative defense in its answer, albeit in similar generalities, the Court decides that no waiver has occurred on this point. In the words of the *Williams* Court, "no ambush occurred."[18] *Id*.

## 2.    The Administrative Exemption

The FLSA requires overtime pay for work done in excess of forty hours per week:

> [N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] . . . at a rate not less than one and one-half times the regular rate at which he is employed.

---

[18]    Given the Court's conclusion that Bottomline did not waive the state-law exemption, the Court need not address Ms. Colello's argument that she suffered prejudice as a result of their supposed waiver because, in her view, state law sets a higher bar for exemption than federal law. *Pl.'s Resp.* at 6-7.

29 U.S.C. § 207(a)(1). The Maine overtime statute contains a nearly identical provision: "An employer may not require an employee to work more than 40 hours in any one week unless 1 ½ times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week." 26 M.R.S. § 664(3).

Quoting 29 U.S.C. § 213(a)(1), the First Circuit noted an administrative exemption whereby "these overtime compensation provisions do not apply to 'any employee employed in a bona fide . . . administrative . . . capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor])." *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995) (quoting 29 U.S.C. § 213(a)(1)); *Hines*, 665 F.3d at 241. Section 213(a)(1), however, does not contain the requirements concerning administrative exemption. They are set forth in the regulations established by the Secretary of Labor and are found in 29 C.F.R. § 541.200(a). According to those regulations, an "employee employed in a bona fide administrative capacity" means any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $ 455 per week . . . , exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a)(1)-(3). This tripartite test can be broken down into the salary basis test (prong one) and the duties test (prongs two and three). *McGowen v. Four Directions Dev. Corp.*, No. 1:12-CV-00109-JAW, 2014 U.S. Dist. LEXIS 30515, at *58-76 (D. Me. Mar. 10, 2014).

24

The employer bears the burden of establishing that the employee was properly exempted. *John Alden*, 44 F.3d at 1070. The Court's interpretation of the exemption is to be "'narrowly construed against the employer[] seeking to assert [it] . . . .'" *McLaughlin v. Bos. Harbor Cruise Lines, Inc.*, 419 F.3d 47, 58 (1st Cir. 2005) (Lipez, J., concurring) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)); *see also Sec'y of Labor v. DeSisto*, 929 F.2d 789, 797 (1st Cir. 1991).

"Whether or not a position is exempt from the overtime requirement is a mixed question of law and fact." *Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106, 114 (D. Me. 1998); *see also John Alden*, 44 F.3d at 1073. "If there is a genuine dispute of fact that goes to the nature of the job duties, then it is 'for a fact-finder and not the Court to determine how the Plaintiff actually spent her work day.'" *McGowen*, 2014 U.S. Dist. LEXIS 30515, at *69 (quoting *Nicholson v. Bangor Historic Track, Inc.*, No. 2:11-cv-00347-NT, 2013 U.S. Dist. LEXIS 25081, at *24 (D. Me. Feb. 25, 2013)). Thus, whether an employee has been properly placed in exempt status "'remains intensely fact bound and case specific.'" *Bolduc*, 35 F. Supp. 2d at 114 (quoting *Bohn v. Park City Grp., Inc.*, 94 F.3d 1457, 1461 (10th Cir. 1996)).

In this case, the parties contest the two prongs of the duties test. Even assuming Bottomline could meet its burden on the management or general business operations prong, 29 C.F.R. § 541.200(a)(2), it cannot do so on the discretion and independent judgment prong. *Id.* § 541.200(a)(3). To resolve the pending motion, therefore, the Court proceeds directly to the third prong.

### a. Deborah Colello's Discretion and Independent Judgment

The dispositive issue before the Court is whether there is a genuine dispute of material fact as to whether Ms. Colello's primary duty included "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200 (a)(3).  The regulations provide guidance as to what constitutes the exercise of discretion and independent judgment:

> (a) To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance.  In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.  The term "matters of significance" refers to the level of importance or consequence of the work performed.
>
> (b) The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises.  Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* § 541.202(a)-(b).

At the outset, the Court agrees with Bottomline that Ms. Colello worked on "matters of significance" as the regulation defines that phrase. The facts make clear that Ms. Colello was a point person within Bottomline for problems its travel portfolio customers experienced with its payment software.[19] *See, e.g.*, DSMF ¶ 7; PRDSMF ¶ 7 ("Colello was the primary contact for key customers post-implementation"); PSAMF ¶ 30; DRPSAMF ¶ 30 ("she was hired to assure customers that there was someone they could reach out to when there were errors in their accounts"). Having found her duties to constitute matters of significance, the dispute homes in on whether Ms. Colello exercised discretion and independent judgment with respect to those matters.

In answering this question, Ms. Colello in particular urges the Court to focus on the factors set out in § 541.202(b). *Pl.'s Opp'n* at 17 (citing *In re Novartis Wage and Hour Litigation*, 611 F.3d 141, 155-56 (2d Cir. 2010), *abrogated on other grounds by Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012)).[20] She is correct that the Court should consider these factors; the First Circuit in *Hines* instructed the lower courts to apply them as part of a "circumstance-specific analysis," while at the same time declining to read into the Second Circuit's *Novartis* opinion a requirement of "unnecessary rigidity" regarding the factors' application. 665 F.3d at 246. The

---

[19]     Based on the above citations to the record evidence, the Court infers that Ms. Colello was a point person without relying on the information newly introduced in Bottomline's reply that she was the only person assigned to the travel industry portfolio. *See Pl.'s Sur-Reply* at 1-2; *Def.'s Resp. to Sur-Reply* at 1-2.

[20]     The *Novartis* decision's precedential value has been called into doubt. *See, e.g.*, *Pippins v. KPMG LLP*, 921 F. Supp. 2d 26, 92 (S.D.N.Y. 2012) ("Since the Supreme Court, unlike the Second Circuit, concluded that the pharmaceutical representatives qualified for the sales exemption, it never reviewed the Circuit's alternative conclusion that they did not fall under the administrative exemption, rendering that aspect of the Court of Appeals' decision pure dictum") (citations omitted). To the extent that Ms. Colello analogizes to the facts of *Novartis*, *see Pl.'s Opp'n* at 18-19, the Court declines her invitation to consider that analogy in ruling on discretion and independent judgment.

27

regulatory factors offer an "*exemplary* list of factors to be considered among 'all the facts involved in the particular employment situation in which the question arises . . . .'" *Id.* (emphasis in original) (quoting 29 C.F.R. § 541.202(b)).

Ms. Colello is also correct to point out that there are factors cutting against a finding that she exercised discretion and independent judgment.  For instance, there is at least a genuine issue of material fact as to whether the "authority to commit the employer in matters that have significant financial impact," 29 C.F.R. § 541.202(b), as evidenced by the fact that she "was required to obtain approval for any billing adjustments and could not refund monies to a customer without approval from a Senior Executive."  DSMF ¶ 18; PRDSMF ¶ 18.  The record also reveals a genuine dispute as to whether she had the "authority to negotiate and bind the company on significant matters," 29 C.F.R. § 541.202(b), as she "was not involved in meetings to discuss Bottomline's overall vision and/or the long-term goals and objectives of Bottomline's customers."  DSMF ¶ 18; PRDSMF ¶ 18.

Other factors cut in favor of finding Ms. Colello exercised discretion and independent judgment.  "[W]hether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business," 29 C.F.R. § 541.202(b), is met because "in essence, [Ms. Colello] was hired to assure customers that there was someone they could reach out to when there were errors in their accounts"; thus, she occupied a particular segment of the business in which she appears to have been a point person.  PSAMF ¶ 30; DRPSAMF ¶ 30.  "[W]hether the employee represents

the company in handling complaints . . . or resolving grievances," 29 C.F.R. §
541.202(b), is also met because Ms. Colello "was hired by Bottomline to work in a
division that was charged with handling customer complaints and payment errors . .
. ." PSAMF ¶ 30; DRPSAMF ¶ 30; s*ee also Hines*, 665 F.3d at 246 n.11 (identifying
factors from the preamble to the current regulations not listed in the regulations
themselves, including "troubleshooting or problem-solving activities on behalf of
management," "authority to handle atypical or unusual situations," and "primary
contact to public or customers on behalf of the employer") (quoting *Defining and
Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales
and Computer Employees; Final Rule*, 69 Fed. Reg. 22,122, 22,144 (Apr. 23, 2004)).

Turning to the caselaw, Bottomline and Ms. Colello spar over the trio of First
Circuit cases—*Hines*, *Cash*, and *John Alden*.   Bottomline contends those cases
require a finding that Ms. Colello exercised discretion and independent judgment,
while Ms. Colello insists those cases are dissimilar to her facts yet helpful to her
argument.  In *Hines*, the First Circuit wrote that "the picture that emerges from the
record is one in which the primary role of sales managers was to secure a steady
stream of business by selling each prospective client on a package of options—
location, timing, atmosphere, design, food and the like, all within the client's budget—
and by ensuring that each event so planned was a success."  665 F.3d at 237.  *Cash*
addressed a plaintiff who worked with various departments "to make sure that they
outfitted and delivered each motorcycle according to the particular purchase order"
and "stay[ed] in touch with the customers . . . mak[ing] sure that they were satisfied

. . . ."  508 F.3d 680.  *John Alden* dealt with marketing representatives who worked without sales scripts to pique independent agents' interest in their insurer, and if a sale went through, they would then act as a conduit between the purchasing party and the insurer's underwriters.  126 F.2d at 4, 13.  All three plaintiffs were found to have exercised discretion and independent judgment.

The record establishes that Ms. Colello's work focused on helping customers with problems they encountered with regard to a specific software product (Commissions Program, Paymode-X).  DSMF ¶ 1; PRDSMF ¶ 1; PSAMF ¶ 30; DRPSAMF ¶ 30.  So, for instance, if a customer had a problem with another product, "they had contacts other than Colello at Bottomline to whom they could reach out."  PSAMF ¶ 32; DRPSAMF ¶ 32.  Though Ms. Colello presents her role as one of a problem-solver between the customer and the company within the niche of a particular product, there are facts suggesting she could respond with some flexibility within that niche.  *See, e.g.*, DSMF ¶ 16; PRDSMF ¶ 16 (quoting Ms. Colello's résumé, which recounts her duties as developing and maintaining customer relationships, managing financial processing, using customer relationship management strategies to build revenues and retain accounts, etc.); PSAMF ¶ 30; DRPSAMF ¶ 30 (quoting Ms. Colello's position description, recounting similar duties).[21]

---

[21]    It is hard to decipher Ms. Colello's actual duties and the scope of those duties from her résumé as a consequence of what could be referred to résumé-speak—meaning the tendency of people to prepare résumés so as to maximize their seeming importance while leaving the reader with only vague notions of what they actually did.  A similar brand of puffery is sometimes evident in employers' position descriptions, presumably as employers seek to attract employees with grandiose descriptions for humdrum jobs.  So despite the language from Ms. Colello's résumé and position description, *see* DSMF ¶ 16; PRDSMF ¶ 16; PSAMF ¶ 30; DRPSAMF ¶ 30, as in *Smith*, the record lacks sufficient specificity with regard to actual duties from which a finding of discretion and independent judgment can be drawn.  2014 U.S. Dist. LEXIS 165883, at *95-96.

Viewing the facts favorably toward Ms. Colello, there are two principal ways in which the plaintiff's duties differ from those of the sales managers in *Hines*, the customer relations manager in *Cash*, and the marketing representatives in *John Alden*.  The plaintiffs in that trio of cases performed duties that were both (1) more comprehensive and (2) more proactive in ways that lent their positions greater discretion and independent judgment than Ms. Colello's.  In contrast to *Hines*, *John Alden* and to a lesser extent *Cash*, she was not an employee who enticed customers in an unscripted, personalized manner to patronize the business and then broadly managed the execution of their patronage.  Such roles are more comprehensive in that they extend beyond servicing a niche of the business and are more self-starting in that they include a proactive element of salesmanship.  The Court concludes that there is a meaningful difference between the trio of cases and the facts in the record as regards discretion and independent judgment.

The parties vigorously dispute the significance of recommendations made by Ms. Colello.  Ms. Colello argues that "[t]he mere ability to make suggestions to your bosses does not indicate that an employee exercises independent judgment or authority.  If that were so, any worker that made passing suggestions about how to improve their jobs would satisfy the 'discretion and independent judgment' prong . . . ."  *Pl.'s Opp'n* at 13.  Bottomline disagrees: "The fact that her decisions and/or recommendations about how customer issues should be resolved were subject to further review, or not ultimately accepted, does not mean that she did not exercise the requisite 'discretion and independent judgment' . . . ."  *Def.'s Resp.* at 6.  Ms.

Colello has conceded that she "submitted recommendations to management regarding enhancements for these customers," DSMF ¶ 9; PRDSMF ¶ 9, and "made frequent recommendations for resolution of clients' problems" as well as "weekly recommendations on how Bottomline could improve its customers' businesses." DSMF ¶¶ 11-12; PRDSMF ¶¶ 11-12. That said, "many of these recommendations consisted of nothing more than Colello passing on processing suggestions from those in more technical roles at Bottomline," PSAMF ¶ 34; DRPSAMF ¶ 34, and "none" of her recommendations was implemented. PSAMF ¶ 37; DRPSAMF ¶ 37. The record evidence also creates a genuine issue of material fact as to whether making recommendations was part of Ms. Colello's primary duty, whether she was discouraged from making recommendations, and whether any employee could make recommendations. PSAMF ¶¶ 35, 38; DRPSAMF ¶¶ 35, 38. While making recommendations—viewed in the abstract—seems likely to involve discretion and independent judgment, the facts viewed favorably toward Ms. Colello demonstrate that there is a genuine issue of material fact as to whether her recommendations were perfunctory requests that Bottomline sometimes discouraged. That being the case, Ms. Colello's periodic recommendations do not eliminate the need for a jury to resolve genuine issues of material fact on this prong.

In short, there is a genuine dispute of material fact as to whether Ms. Colello's primary duty included the exercise of discretion and independent judgment with respect to matters of significance.

V.      **CONCLUSION**

The Court concludes that there is a genuine dispute of material fact as to whether Ms. Colello's position qualifies for administrative exemption.  It therefore DENIES Bottomline, Inc.'s Motion for Summary Judgment (ECF No. 21).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of February, 2016